[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Deborah A. Loper and Brian Loper appeal the decision of the defendant insurance commissioner denying the plaintiffs' application for payment from the Brokered Transaction Guaranty Fund (hereinafter referred to as the Fund), established pursuant to the Brokered Transaction Guaranty Fund Act, General Statutes § 38a-880 et seq. The commissioner acted pursuant to § 38a-884 (a), on the basis that the plaintiffs failed to give the notice required by that statute. The plaintiffs appeal pursuant to § 4-183. The court finds in favor of the plaintiffs.
The facts essential to the court's decision are not in dispute and are fully reflected in the record. Plaintiff Brian Loper was employed by the Chessmen Corporation and had health insurance covering himself and his wife, plaintiff Deborah Loper, pursuant to a trusteed plan administered by Joseph J. CT Page 8006 Waszkelewicz, trustee, and Medical Trust Administrators, Inc., the plan administrator. The insurance broker was Pequot Insurance Group, Inc., and the insurance company was Nutmeg Employers Benefit Association. In October 1990, the insurance plan was terminated, but no one notified the plaintiffs. Instead, the other parties described above allegedly continued to collect premiums from the plaintiffs and other employees insured through the trust. This situation came to light, inevitably, when the plaintiffs and others submitted claims for insurance benefits after the plan had, unbeknownst to them, terminated.
In March 1991, the plaintiffs incurred approximately $8,000 in medical expenses. At that time, Nutmeg, the insurance company, was already defunct, and the plaintiffs never received the insurance benefits they had paid for.
In February 1992, the plaintiffs filed a civil action against Waszkelewicz and Medical Trust Administrators, Inc., seeking damages resulting from the failure to provide the insurance coverage. In July 1993, the plaintiffs amended their complaint in the civil action to cite in the insurance company and Pequot Insurance Group, Inc., the broker.
In April 1994, the plaintiffs notified the department of insurance that they had instituted the civil action against the insurance company and broker. In their notice, the plaintiffs made reference to General Statutes § 38a-880 et seq., the provisions relating to the Fund.
The Fund was established by the legislature in 1989 to provide compensation to victims of embezzlement by insurance brokers who collect premiums from the victims without securing insurance coverage for them. The Fund would provide compensation for losses such as alleged by the plaintiffs in this case.
Under the 1989 law, in order to obtain compensation from the Fund, a claimant had to initiate a lawsuit against the tortfeasor, secure a judgement and execution, and show that the judgment remained unsatisfied. In addition, § 38a-884 (a) provided as follows:
 When any aggrieved person commences any action for a judgment which may result in the collection from such guaranty fund, the aggrieved person shall notify the department in writing to this effect at CT Page 8007 the time of the commencement of such action.
Effective October 1, 1993, the legislature significantly amended the statutes. After that date, the aggrieved person no longer had to obtain an unsatisfied judgement to be eligible for compensation from the Fund. Instead, the person must simply apply for such compensation within two years of the date of the embezzlement and show eligibility for the benefit at that time.
In the present case, on December 14, 1995, the defendant commissioner held a hearing on the plaintiffs' application for compensation from the Fund. Following the hearing, on February 16, 1996, the commissioner rendered his final decision denying the application. On the basis of the facts summarized above, the commissioner concluded that the 1993 changes in the statutes do not apply to the plaintiffs' application. Rather, he determined that the procedures set forth in the 1989 law applied. The commissioner held that the plaintiffs were not then eligible even to apply for compensation from the Fund because they had not, at that time, obtained an unsatisfied judgment against the tortfeasors.[1]
The commissioner noted a seeming conundrum resulting from the different eligibility requirements of the 1989 and 1993 provisions and their respective statutes of limitation. The 1993 amendments would, if applied literally, preclude these plaintiffs, and others claiming under the 1989 law whose lawsuits had not yet gone to judgment, from obtaining compensation from the Fund. This was because the two year 1993 statute of limitations runs from the time of the alleged embezzlement (in the year 1991 in the plaintiffs' case) and would block their claims for compensation when they finally obtained their unsatisfied judgments more than two years later. However, the commissioner construed the statutes to allow such claimants under the 1989 law to "preserve(d) their right to apply for an order directing payment from the Fund pursuant to the 1989 Act" provided they had given the notice required by the 1989 version of § 38a-884 (a), quoted supra. The commissioner held that the time for giving such notice, although expressed in the statute as "at the time of the commencement of such action," is, rather, within a reasonable time after commencing the action. The commissioner noted that other individuals who had been allegedly bilked by Pequot et al had received compensation from the Fund on the basis that they had given notice "within a reasonable amount of time" after commencing suit. CT Page 8008
Finally, the commissioner found that the plaintiffs in this case gave notice to the department approximately nine months after commencing the action against the insurance broker and insurance company, whose conduct would be covered by the Fund. In his decision, the commissioner implied, without stating explicitly, that this was a longer period than the time found to have been reasonable in the cases of the successful claimants. The commissioner held that the nine month delay after commencing the action in this case was not reasonable and, therefore, the plaintiffs had not preserved their right to apply for compensation from the Fund pursuant to the 1989 law. It is that determination that is the subject of this appeal.
The plaintiffs do not dispute the commissioner's determination that they are subject to the procedural provisions of the 1989 law. Nor do the plaintiffs dispute the commissioner's holding that, at the time of his decision, no judgment having been obtained, their right to apply for compensation had not yet matured. The bases of the plaintiffs' appeal is their contention that the commissioner erroneously held that the notice is an absolute prerequisite to obtaining compensation and, in the alternative, that he wrongly concluded that they had failed to give the required notice to the department within a reasonable time after commencing their lawsuit. They argue, in essence, that the commissioner's decision was arbitrary and unreasonable and denied them equal protection of the law. The latter argument is based on the fact that the other claimants were permitted to apply for compensation notwithstanding that they did not give notice in strict compliance with the literal provisions of the statute.
The plaintiffs' argument that the notice provision in the 1989 version of § 38a-884 (a) is not mandatory may not be sustained.
In Yanni v. DelPonte, 31 Conn. App. 350 (1993), the Appellate Court set forth the test for determining whether a statutory provision is mandatory or merely directory as follows:
 The legislature's use of the word "shall" does not in and of itself create a mandatory duty to perform an action . . . Statutes are viewed as a whole in order to ascertain the legislative intent. . . . The test for determining whether a CT Page 8009 statutory requirement is mandatory or directory is whether the prescribed mode of action relates to a matter of substance or convenience . . . Provisions relating to matters of substance are mandatory, whereas provisions designed to secure order, system, and dispatch in the proceedings [are] generally held to be directory, especially when the requirement is stated in affirmative terms unaccompanied by negative words . . . A statutory provision of convenience is mandatory when that provision is accompanied by language that expressly invalidates an action taken after noncompliance with it.
(Citations and internal quotation marks omitted.) Id., 353-354.
In his decision, the commissioner held that the notice provision in § 38a-884 (a) relates to a matter of substance, not designed merely to secure order, system and dispatch. In support of this conclusion, the commissioner stated that the provision provides the department the opportunity to request the intervention of the state's attorney general in the private law suit pursuant to § 38a-886. The commissioner noted the "importance" of this opportunity to intervene in the lawsuit at a meaningful time. In addition, at the administrative hearing in this case, a representative of the department testified that the notice provision also gives the department the opportunity to conduct an investigation of the alleged tortfeasors while evidence is still available. In his brief on appeal, the commissioner reiterates this contention, arguing that the department must have the opportunity "to pursue malfeasors while the trail remains fresh."
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissioner of EnvironmentalProtection, 226 Conn. 358, 372 (1993). This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned. Id., 376. CT Page 8010
The commissioner's interpretation of § 38a-884 (a) holding that the giving of notice to the department is mandatory, not merely directory, is completely reasonable, particularly in view of the other statutory provision relating to possible intervention in the lawsuit. Without notice to the department, the department might never learn about the suit in time to institute intervention by the attorney general.
The court's conclusion that the commissioner's interpretation of § 38a-884 (a) was correct does not end its review of the commissioner's decision. "Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v.Administrator, Unemployment Compensation Act, 209 Conn. 381, 385
(1988).
The plaintiffs claim that in this case the commissioner enforced the notice requirement against them in a manner that was arbitrary and unreasonable, thereby depriving them of the benefits provided by the Fund. The court agrees.
It seems undisputed that at all relevant times the department knew about the defalcations of Pequot and Nutmeg. So it is unlikely that notice from the plaintiffs nine months or even two years earlier would have initiated any investigation beyond that which the department had already conducted. Furthermore, there is nothing in the record to suggest, nor does the commissioner claim, that the attorney general could not have effectively intervened in the plaintiffs' lawsuit at the time the department received notice of it. The court notes that the lawsuit remained in active status for more than two years after the notice, until it was concluded by a judgment for the plaintiffs. The attorney general could have intervened at any time during that period, presumably without prejudice to the state's rights in the case, but he did not. These facts lead inescapably to the conclusion that the commissioner, the department of insurance, the attorney general — indeed, the people of the state — were not prejudiced by the timing of the notice of the plaintiffs' lawsuit in this case. At oral argument on this appeal, counsel for the commissioner conceded that there was no prejudice occasioned by the timing of the notice.
In summary, the following factors are relevant to the court's CT Page 8011 review of the reasonableness of the commissioner's decision:
 1. The commissioner broadly interpreted the statutory provision relating to the time for giving notice as "within a reasonable amount of time after commencing a suit in connection with the matter in superior court."
 2. Nevertheless, the commissioner interpreted the provision requiring some notice as mandatory, not merely directory.
 3. The reason why the statutory provision is mandatory is that the notice provides the department of insurance the opportunity to conduct an independent investigation of the alleged fraud, and it provides the attorney general an opportunity to intervene in the lawsuit to protect the interests of the state.
 4. The department and the attorney general had no need to investigate or intervene in the lawsuit in this case and did not do so.
 5. Even if the department or the attorney general had desired to investigate or intervene in the lawsuit in this case, they could have done so effectively at the time the plaintiffs did give their notice.
 6. There was no other prejudice to the state as a result of the timing of the notice.
 7. In his decision, the defendant commissioner cites no other reasons for concluding that the timing of the plaintiffs' notice under the circumstances of this case was unreasonable.
The commissioner's decision held that the plaintiffs' notice was not timely under § 38a-884 (a) and, therefore, did not preserve their right to apply for compensation from the Fund under the 1989 law when and if they obtained a judgment that could not be satisfied. Based on the factors summarized above, the court concludes that the decision was arbitrary and unreasonable under the particular facts of this case. It may not, CT Page 8012 therefore, be affirmed.
Pursuant to General Statutes § 4-183 (j), the plaintiffs' appeal is sustained. Pursuant to § 4-183 (k), the case is remanded to the department of insurance and the department is ordered to accept, review and act on the plaintiffs' application for compensation from the Fund in accordance with applicable provisions of the 1989 law.
MALONEY, J.